Olinda Land Company v. Commissioner.
Olinda Land Co. v. Commissioner
Docket No. 23.
United States Tax Court
1945 Tax Ct. Memo LEXIS 142; 4 T.C.M. (CCH) 675; T.C.M. (RIA) 45229; June 26, 1945
A. Calder Mackay, Esq., Adam Y. Bennion, Esq., and John S. Chapman, Esq., for the petitioner. Earl C. Crouter, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves an income tax deficiency of $57,894.28 and an excess profits tax deficiency of $45,639.81 for the year 1938. The sole question is the amount of gain realized by petitioner on the sale of its oil properties to the Shell Oil Company in 1938. The petitioner *143 filed an income and excess profits tax return for the year 1938 with the collector of internal revenue for the sixth collection district of California. A claimed deduction for attorney's fees has been abandoned. Findings of Fact Petitioner is a California corporation organized in 1900 with its office in Los Angeles, California. On or about December 1, 1900, it acquired approximately 4,480 acres of land situated in Orange County, California, for a recited consideration of $500,000. In November 1906 petitioner sold 1,650 acres of its land for $98,946.60 to Jacob Stearn. The remaining land was a single contiguous tract located in sections 8, 9, 10, 14, 15, 16, 17, 22 and 23, township 3 south, range 9 west, in Orange County. At the time petitioner acquired the property in 1900 there were two outstanding oil leases thereon which had been granted in 1898 by the then owner. Petitioner acquired the property subject to these leases and was substituted as lessor thereof. These were the West Coast and the Columbia leases, which latter lease at that time covered 320 acres, being the southeast quarter of section 9 and the northeast quarter of section 16. Each lease conferred upon the lessee *144 the right to drill for oil and gas for a period of 15 years, with the permanent right to pump wells that had been drilled during that period so long as oil or gas could be produced therefrom in paying quantities. Each lease reserved a royalty to the lessor of one-eighth of the net production of oil and other mineral substances. The validity of the Columbia lease was being contested at the time petitioner acquired the property, and was supplanted by a new lease by petitioner on February 1, 1901, covering the same territory and upon the same terms, except that the drilling rights expired on February 1, 1914. The drilling rights on the West Coast lease expired October 8, 1913. The drilling rights under the Columbia lease were forfeited in 1909 under the provisions of the lease, at which time approximately 49 acres of the leasehold in section 9 had been developed for oil. The West Coast lease covered approximately 58 acres in the extreme northwest portion of petitioner's holdings in section 8. The fair market value of the oil reserves therein as of March 1, 1913, was $248,908.14, which amount had been fully depleted by January 1, 1938. The fair market value of the oil reserves of the *145 Columbia lease on March 1, 1913, was $14,309.95, and this amount had been fully depleted by January 1, 1938. On August 2, 1912, petitioner leased approximately 2,300 acres of this land for a period of 5 years for grazing purposes at a rental of $1,200 a year. Petitioner reserved all oil and mineral rights on this tract. This lease was later renewed on several occasions with slight increases in the rental. Prior to 1908 petitioner had expended considerable sums for oil development on its own account in its holdings in sections 8, 9 and 10. In 1908 petitioner drilled several wells on its land in section 8 immediately south of the acreage covered by the West Coast lease. During the period 1908 to 1913 petitioner was actively engaged in developing oil wells on a tract of approximately 35 acres in this area. Nearly all of the wells drilled by petitioner during this period were located on this tract of 35 acres which was located immediately south of the acreage in the West Coast lease. In 1924 petitioner and representatives of the Bureau of Internal Revenue entered into an agreement whereby a value of $302,706.07 for depletion purposes was placed on petitioner's oil producing acreage *146 in this area as of March 1, 1913. This sum was used in computing depletion on this particular property for the taxable years 1917 up to and including 1938. At the time the agreement was entered into it was intended by the parties that this value apply only to the petitioner's active oil producing acreage which consisted of this tract of approximately 35 acres in section 8. In August 1931 petitioner leased approximately 75 acres to A. H. Brown, doing business as the Brea-Olinda Oil Company, reserving to itself a one-sixth royalty. This lease included the 35 acres in section 8 which petitioner had been working since 1908 and where the great majority of petitioner's producing wells were located. After the Brea-Olinda lease was executed petitioner used the same value of $302,706.07 in computing depletion on its royalty income from that lease. These three leases were in effect on January 6, 1938. On that date petitioner sold all of its land to the Shell Oil Company for $500,000. The deed included the land previously leased and the Shell Oil Company was substituted as lessor in each case. Petitioner reported a gain of $28,464.98 from this sale which was computed in the following manner. *147 Petitioner treated each of its three leases separately. Its books showed that the reserve values for the West Coast and Columbia leases had been fully depleted and showed a remaining basis for the Brea-Olinda lease of $9,119.37. The remaining acreage was allegedly valued at March 1, 1913 value and showed no depletion charges against it. The March 1, 1913 value of petitioner's property exceeded the cost of these properties to petitioner. The fair market value on March 1, 1913, of the oil rights of petitioner's property, excluding the acreage previously leased and excluding the acreage in production, was not less than $380,000. The surface rights to petitioner's entire holdings were worth not less than $115,000. Opinion In its income tax return for 1938 petitioner reported a gain of $28,464.98 from the sale of its property to the Shell Oil Company. The respondent determined an additional gain of $392,293.74 by allocating the value of $302,706.07, used by petitioner solely on the acreage covered in the Brea-Olinda lease, to all of petitioner's holdings, exclusive of the West Coast and Columbia leases, holding that petitioner had a remaining basis for such acreage of $9,119.37. *148 The determinative issue is the proper basis to be used in determining gain or loss on the sale of the property in question. Petitioner contends that the value of $302,706.07 was only for its producing oil property consisting of about 35 acres in section 8 and which land was included in the Brea-Olinda lease. Petitioner insists that no depletion adjustment is applicable to the acreage remaining after eliminating Brea-Olinda, West Coast and Columbia leases, and, hence, that the March 1, 1913, value of such remaining acreage has not been subjected to any depletion of any kind. Petitioner claims that the unadjusted March 1, 1913 value of such remaining acreage should be added to the adjusted values of the three leases above designated in arriving at the basis for gain or loss. Since 1924 petitioner has consistently used the value of $302,706.07 as a basis for depletion on the producing territory of approximately 35 acres. After the execution of the Brea-Olinda lease covering approximately 75 acres, including the 35 acres hereinabove mentioned, petitioner used the same value in computing depletion on its royalties from that lease. Respondent has accepted this treatment since the agreement *149 of 1924. We have found that at the time the agreement of 1924 was entered into it was intended by the parties that the value of $302,706.07 apply only to the oil content of petitioner's producing acreage consisting of 35 acres in section 8. In view of this conclusion it becomes necessary to determine the fair market value for oil of the remainder of petitioner's property on March 1, 1913, as well as to the fair market surface value of the entire property as of that date. Respondent agrees that petitioner is entitled to use as a basis cost or March 1, 1913 value, whichever is higher. We have found the March 1, 1913 value to be higher than the cost. Also, both parties seem to agree that fair market value on that date should be used in this case. Respondent determined that the value of the surface rights of petitioner's property was $52,080. Respondent's expert witness testified that on March 1, 1913, the fair market value of the oil and mineral rights of petitioner's property, excluding the property under lease at that time, was $184,280. Petitioner's expert witness testified that the fair market value of the surface rights was $115,027, and that the oil rights of the undeveloped remaining *150 acreage were worth $380,000. Another witness for petitioner, who was in its emply during the period 1908 through 1913 as field superintendent in charge of drilling and production, and who was familiar with oil developments in the area, testified that in his opinion the March 1, 1913, value of all of petitioner's property was in excess of $1,000,000. He also testified that the company had rejected an offer of $1,000,000 for its holdings in 1912. It further appears that in 1914 or 1915 an offer of $1,000,000 for the company's property progressed to the point where an option was given for the purchase at this figure, but this deal fell through. In arriving at a value for the March 1, 1913 date, conditions as they existed at the time and not what has happened since that date are important. J. J. White Lumber Co., 24 B.T.A. 274. It is unnecessary to set out the testimony of the witnesses. The cumulative effect of all the evidence has convinced us that respondent's values are erroneous and that petitioner has sustained its burden of proof. The meager evidence offered by respondent as to the surface values leaves us no alternative but to accept the testimony in this respect *151 of the qualified witness who appeared for petitioner and we have so fond. Furthermore, the testimony of respondent's expert witness is inconsistent with respondent's contention as to the value of the oil rights. This witness testified that the oil rights of petitioner's holdings, exclusive of the territory covered by the Columbia and West Coast leases, were worth $184,280. For years respondent was satisfied that $302,706.07 was the fair value of petitioner's oil properties exclusive of these leases and in the present proceeding he is contending that this value is adequate of all of petitioner's holdings excluding such leases. Respondent's expert witness had been employed by the United States Government as a geologist during 1906 and 1907, and during this period, in conjunction with others, had prepared and published reports indicating that a great part of petitioner's holdings was potential oil property. In the present case he testified that less than 200 acres were potential oil property as of that date. He explained this discrepancy by stating that it was inconsistent with his position to dispute the opinion of his superior at that time. Whatever the reason may be for the difference *152 between his testimony herein and the statements published over his name in 1906, we think the statements published are important as indicating what the informed sources believed at the time as to the oil potentialities of petitioner's holdings. Other evidence indicating the value of petitioner's holdings is the price of its stock on the Los Angeles Stock Exchange which indicated that the company's holdings were worth in excess of $1,000,000 on March 1, 1913. Also in 1912 the stockholders had authorized the officers to borrow $200,000 to be used for development purposes instead of the former practice of leasing. We have found that the value of the oil rights on petitioner's property on March 1, 1913, excluding the acreage previously leased and excluding the 35 acres in production, was not less than $380,000, and that the surface rights of all of petitioner's property were worth not less than $115,000. We hold, therefore, that petitioner's basis for determining gain or loss on the sale of its property is the total of the two values just stated plus the adjusted basis for depletion of the oil producing property developed by petitioner in section 8. Because of uncontested adjustments, *153 Decision will be entered under Rule 50.